[Henderson v. Henderson's Adm'r.] .

# Henderson *v.* Henderson's Adm'r.

### *Contest of Creditor's Claim Against Insolvent Estate.*

1. *Filing claims against insolvent estate.*—When a claim against an insolvent estate, duly verified, is filed within nine months after the declaration of insolvency (Code, § 2568), the failure of the probate judge to register or docket it, does not invalidate the filing; but, when the creditor relies upon a filing made before the decree of insolvency, he must show that the claim was verified as a claim against an insolvent estate, and was duly registered or docketed so as to afford notice and opportunity for filing objections to it. (Explaining *Levert v. Read,* 54 Ala. 529, and *Shelton v. Poulson,* 60 Ala. 578.)

2. *Revision of probate decree, on question of fact.*—On appeal from a probate decree on a disputed question of fact, "it requires a very clear conviction of error to justify a reversal."

APPEAL from the Probate Court of Macon county. .

Heard before the Register in Chancery, on account of the disqualification of the probate judge.

In the matter of the insolvent estate of John C. Henderson, deceased, against which a claim was asserted by Joshua M. Henderson, the allowance of which was contested by the

administrator and distributees, on the ground that the same was not filed within nine months after the declaration of insolvency. The claim, as asserted against the insolvent estate, was in the form of a judgment for $750, rendered by the Circuit Court of said county, at its Spring Term, 1867, in favor of the claimant, and against Lemuel Henderson, the former administrator of said John C. Henderson. This judgment was founded on a claim for $500, which had been filed against the estate of said decedent by said claimant, according to the testimony of the claimant's attorney by whom it was filed, " prior to the 13th March, 1858, and before the expiration of eighteen months from the grant of letters to the said Lemuel Henderson ;" but, being contested by the administrator, suit was brought upon it, and judgment recovered as above stated. " It was admitted that said Lemuel Henderson, the administrator-in-chief of said John C. Henderson, made a partial settlement of said estate in June, 1861, and distributed about $10,000 among the heirs, being all the assets except about $1,000, which was ordered by the court to be retained in the hands of the administrator, to meet whatever judgment might be recovered in the suit on said claim ; that this was the only claim outstanding against said estate ; that said estate was reported and declared insolvent on the 13th May, 1867, within a month or so after the recovery of said judgment ;" and the claimant's attorney testified, that the declaration of insolvency was made in consequence of the recovery of this judgment. It was admitted, also, that at the June term of said Probate Court, 1877, " a decree was rendered against said administrator, for $1,576, being the amount of the said sum retained, with interest thereon, and which is now assets in the hands of the administrator *de bonis non.*"

The original claim as filed, and the book in which it was registered or entered, were proved to be lost ; and the matters of controversy were, as to the verification of the claim when originally filed, and as to the filing and verification of a transcript of the judgment. As to the filing and verification of the original claim, R. F. Ligon, the claimant's attorney in all the litigation, testified, " that said claim was filed in the office of the Probate Court of said county, prior to the 13th March, 1858, and before the expiration of eighteen months from the grant of letters to said Lemuel Henderson, as a subsisting claim against said estate, and, according to the best of his recollection, was properly verified by one Hollis ; that said claim was entered on the book kept for the registry of such claims in the probate office ; that said claim and book have both been lost, and neither can be found

after diligent search in the places where they ought to be; that he has no distinct recollection of the contents of the verification made by said Hollis, and cannot, from his recollection of said affidavit alone, state any thing as a fact that may have been therein stated; and that he thought he had made the affidavit, until a recent interview with Mr. Clopton, his associate counsel, who, he found, had filed the claim himself."

To prove the filing and verification of the judgment, the plaintiff took the deposition of J. T. Menifee, who was one of his attorneys in the original litigation, and who thus testified : " His best recollection is, that a certified copy of said judgment was filed in the Probate Court of said county in the summer of 1867, say in July or August; cannot say just how long after said estate was declared insolvent; does not remember when said estate was declared insolvent; thinks it was in the early part of 1867; is satisfied that it was within nine months after the declaration of insolvency, for the following reasons : I had many interviews with Capt. R. F. Ligon about this case, and on one occasion, while speaking about it, he referred to the declaration of insolvency, and asked me, he being about to leave town, to procure a certified copy of the judgment, and have it verified and filed in the Probate Court ; which I did.  According to my best recollection, this was done in the summer of 1867, say July or August.  I am satisfied that said transcript was verified, and that I, as one of the attorneys, did it.  The verification was in the usual form, and was to the effect that the debt evidenced by the transcript was just, due, and unpaid.  The verification was made, either before Mr. Bilbro, who furnished the transcript, or before Judge Stanton, the judge of the Probate Court; if before Bilbro, it was before the filing, I think ; if before Judge Stanton, it was at the time, I think. My memory wont tell me before which officer it was verified. The transcript had the certificate of the clerk attached, and was handed by me to Judge Stanton, for the purpose of being filed against said estate.  My best recollection is, that said transcript was filed in July or August, 1867, by Judge Stanton writing the word *Filed* on the back of the transcript with the date.  Stanton was then judge of probate.  Can't say the claim was entered on the book kept for that purpose ; don't remember.  I ceased to recur to this claim eight or nine years since ; don't remember to have thought of it for eight years.  I am interested to the amount of one-half of the fees, and expect to get a part of the funds in the event said Joshua Henderson wins."

The claimant also introduced R. H. Abercrombie as a wit-

[Henderson v. Henderson's Adm'r.]

ness, " who testified, that he was the attorney for the administrator-in-chief in the claimant's suit against him, and also in the proceedings for declaring the estate insolvent, the decree of insolvency being rendered within a month or two after the recovery of said judgment; that within nine months after the declaration of insolvency, to the best of his recollection, though he can not remember exactly how long afterwards, he saw J. T. Menifee in the office of the probate judge of said county; that Menifee then had in his hands a transcript of the judgment in the claimant's said suit against the administrator of said estate, and attached thereto was the certificate of the clerk of the Circut Court, the verbiage of which he could not remember, nor all the contents thereof, but he does remember, as a fact, that said transcript contained a statement of the case, the names of the parties, and the amount of the judgment, which was $750; that he examined said transcript closely, and remembers that he saw no objection to it, except that there was no verification indorsed on it nor then attached to it; that he never saw said paper afterward, and does not know whether or not Menifee swore to it afterwards; does not remember whether said claim was indorsed *Filed* or not, but knows that said claim was the only claim against said estate, and that said estate was declared insolvent because of the judgment recovered on said claim." This witness stated, on cross-examination, among other things, " that he did not remember anything as to any indorsement showing that said transcript was filed, and is certain there was no verification of it; that Menifee was trying to compromise said claim with him, and he continued the negotiations with the hope of having the claim barred by the statute of non-claim; that his knowledge of the contents of said transcript is based upon what he knew of the facts of the case," &c.

The claimant introduced P. S. Holt as a witness, who was the probate judge of said county, and " who testified that, in 1872, or 1873, he, as the attorney of the heirs who are contestants, searched the papers and records in the probate office, to ascertain if he could find any claim against the estate of said J. C. Henderson, either in the book of claims, or among the papers of the office, and found none filed or registered against the insolvent estate; that he has again searched, since he has been probate judge, in the place where such papers are usually kept, for claims, but could find none in the office; that the book in which claims against estates were registered, was not in the office, and had not been since 1875, having been lost; that one Stanton was probate judge in 1867, and was very careless in handling the papers of the

[Henderson v. Henderson's Adm'r.]

office." The witness further testified, "that he was the clerk for said Stanton while probate judge in 1867, until he went out of office in August, 1867, and attended to the filing and recording of papers; that Stanton attended to but little of that kind of office work; that no transcript of a judgment against said estate, in favor of the claimant, was ever handed to him to file against said estate, nor did he file any in 1867 or 1868, nor did he see or know of any such claim in said office; that a claim might have been handed to Stanton, the probate judge, in his office, to be filed against said estate, without his (witness) knowing about it, nor can he state that such was not done; and that when he first searched the office, as above stated, in 1872, or 1873, he was accompanied and assisted by one A. A. Henderson, one of the distributees and contestants."

The claimant then offered in evidence a transcript of his said judgment, and also a substantial copy of his original claim as filed, to each of which was attached an affidavit made by his attorney before said Holt as probate judge, as to its correctness, and as to the facts connected with the filing, above stated; and R. H. Abercrombie, his attorney, testified as a witness in his behalf to the same facts. The transcript and copy-claim were rejected on motion of the contestants, and the claimant excepted. The contestants introduced James E. Cobb as a witness, " who testified that, in 1872, or 1873, he, as the attorney for the heirs of said J. C. Henderson, examined the records of the Probate Court, and among the papers pertaining to the estate of deceased persons, with a view of ascertaining if there was any record or statement of this claim against the insolvent estate of said J. C. Henderson; that he saw a statement of a claim, made on a docket of claims against the solvent estates of deceased persons, in favor of J. M. Henderson, against this estate, but there was no such claim on file in said office, and no such claim was docketed against said estate, on the docket of claims against insolvent estates." On all the evidence adduced, the substance of which is above set out, the court sustained the objections of the contestants, and excluded the claim; to which ruling and decree the claimant duly excepted. The final decree, and the rulings on the evidence, are now assigned as error.

R. F. LIGON, for appellant, cited *Levert v. Read*, 54 Ala. 529; *Shelton v. Poulson*, 60 Ala. 578; *Phillips v. Blevins*, 38 Ala. 252; *Flinn v. Shackleford*, 42 Ala. 202; *Erwin v. McGuire*, 44 Ala. 504; *Thornton v. Moore*, 61 Ala. 351; Sess. Acts 1869-70, p. 435.

[Henderson v. Henderson's Adm'r.]

H. C. TOMPKINS, J. A. BILBRO, and A. H. GRAHAM, *contra*, cited *Sharp v. Harris*, 32 Ala. 502 ; *Puryer v. Puryer* 34 Ala. 555 ; *Dennis v. Coke*, 34 Ala. 611 ; *Beeve's Adm'r v. Phillips*, 37 Ala. 312.

STONE, J.—Counsel for appellant seem to misapprehend the principle settled in the cases of *Levert v. Read*, 54 Ala. 529, and *Shelton v. Paulson*, 60 Ala. 578. It was not our intention to decide, in those cases, that a mere presentation of a claim to the administrator, within eighteen months after his appointment—made in the ordinary way, which prevents the bar of the statute of non-claim—*per se* dispenses with the necessity of filing the claim, verified, within nine months after the estate is declared insolvent. In the first of those cases, although the claim had been filed before the final decree of insolvency, it was done after the report of insolvency, and while proceedings thereon were pending. It was filed, verified, and was duly registered in the probate office. The claim remained in the office, and the filing was transcribed in that office in the book entitled 'Docket of Insolvent Claims.' We said : "Mrs. Levert, in filing the claim verified, did so with a view to a compliance with the requirements of the statute." It is manifest that, in that case, no one was, or could be misled, by the fact that the filing antedated the decree of insolvency.

In the case of *Shelton v. Paulson*, the claim was also filed, verified, between the report and declaration of insolvency, and was left of file in the court. The Probate Court ruled the filing sufficient, "being of the opinion, and so ruling and holding, that said claim had been filed in this court, as a claim against said insolvent estate, and all the while since said filing and docketing had remained in said court, or on file with the papers of said estate, the same having never been withdrawn after the declaration of insolvency." According to this finding of the court, the filing in that case was evidently intended as a filing in the insolvency. It was filed four months after the report of insolvency, and yet before the decree ; was verified, docketed, and the claim remained in the court all the while, until the settlement. We ruled, that, the claim asserted fell within the principle settled in *Levert v. Read, supra.*

In each of these cases, it can not be doubted the claim was intended to be filed as a claim against the insolvent estate. We did not, in our rulings, intend to dispense with such filing. What we intended to decide, and did decide, was, that when a claim was filed, verified, was docketed, or placed on the register of claims against the estate, the administrator

[Henderson v. Henderson's Adm'r.]

and other creditors were furnished all the information needed in filing objections to it, and would not be heard to object that the filing was premature. The docketing or registration, was the notifying fact, which, in our opinion, disproved any and all injury that might result from a failure to wait until the decree of insolvency was pronounced, before verifying and filing the claim. A claim, not registered and verified, would furnish no excuse for failing to file within nine months after the declaration of insolvency. It is only when there is registration, or docketing, that this irregularity becomes harmless. A different rule prevails, when the claim is filed, verified, within the nine months. That being done, a neglect of the judge of probate to docket or register the claim would not invalidate the filing.

In the present record, it is, perhaps, shown that the claim was filed in the Probate Court, as a claim against Henderson's estate, within eighteen months after administration was granted. How that claim, then an open account, was verified, is not clearly shown. Several years afterwards, this claim was reduced to judgment, and not long after that, the estate was declared insolvent. The disputed question is, whether the claim was filed, verified, within nine months after the decree of insolvency. We do not think the proof is clear and full enough to produce a conviction, either that in the original filing of the claim, it was verified as claims against insolvent estates are required to be, or that it was registered or docketed so that persons searching for information could obtain it. So, we need not inquire whether a filing in 1861, or 1862, in lieu of presentation as a claim against the estate, could be so made as to dispense with filing, verified, against the insolvent estate, in 1867.

The question in the case then remains, is it affirmatively shown that the claim was filed, verified, within nine months after the decree of insolvency? The witnesses were examined before the register, sitting for the judge of probate, and on their testimony he found this issue in favor of the contestants, and disallowed the claim. Under the rule which obtains in such cases, we do not feel at liberty to reverse his finding. It requires a very clear conviction of error, to justify a reversal in such case.—*Dam v. Mayor*, 36 Ala. 304; *Kirksey v. Kirksey*, 41 Ala. 626; *Howard v. Harper*, 54 Ala. 629; *Ex parte Nettles*, 58 Ala. 268.

What is said above renders a consideration of all other questions immaterial. The testimony rejected did not tend to strengthen the oral proof of filing; and hence, whether right or wrong, ruling did the appellant no harm.

Affirmed.